CAPE COD CRANBERRY SALES COMPANY *vs.* CHARLES
E. WHITNEY & another.

Suffolk.    November 13, 14, 1900. — January 3, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

In an action to recover the contract price for cranberries sold, it appeared that A.,
a grower of cranberries at Wareham, wrote to the agent of B., a fruit and pro-
vision dealer at San Francisco, " We can quote you to-day fancy berries such as
you would want to ship to California 5.25 f. o. b." and offered "freshly picked
and solidly packed fruit that will carry for future trade." B.'s agent answered
by telegraph "Am offered at five will you meet it" to which A. replied " Tele-
gram received have entered order car fancy five dollars f. o. b.  Wire shipping
instructions." There was evidence that the term "fancy berries" in the cran-
berry trade meant berries of excellent quality and not a particular variety, and
that the berries which were best for immediate sale in the Boston market might
not be the best for transportation to California.  *Held,* that the words "such as
you would want to ship to California" were a material part of the contract.

CONTRACT, to recover $1,000 and interest for two hundred
barrels of cranberries sold at $5 a barrel.  Writ dated January
9, 1899.

At the trial in the Superior Court, before *Braley,* J., it ap-
peared, that the plaintiff was a corporation engaged in raising
cranberries, having its place of business at Wareham, Massachu-
setts.  The defendants were fruit and provision dealers at ·San
Francisco, California.  Much 'correspondence between the par-
ties was put in evidence, of which the material parts are stated
in the opinion of the court.

The cranberries were shipped by the plaintiff and were re-
ceived in California by the defendants, who refused to pay the
contract price for them.

By the correspondence "fancy" cranberries were ordered.
There was evidence, in regard to the meaning of the word
"fancy" in the cranberry trade and as to the kind of berries
desirable for shipment to California, the substance of which is
stated in the opinion of the court.

The plaintiff asked the judge to rule that "if the plaintiff
shipped fancy cranberries, fruit that would carry for future
trade, and such as defendant would want to have shipped to
California," it had fulfilled the terms of the contract.  The

judge refused so to rule, and in submitting the case to the jury, among other things, said: " The learned counsel for the plaintiff orally has asked me to instruct you that the contract between the parties is not as I have instructed you, but is to read in this way : ' Telegram received. Have entered order for car fancy $5 f. o. b. such as would want to ship to California. Wire shipping instructions.' I refuse so to rule, and I save his exception to the refusal."

On the point raised the judge instructed the jury as follows :

" What was the contract ? I instruct you for the purposes of this case that when, on the 15th day of September, 1896, the plaintiff in this case sent to Mr. Bray, the agent of the defendants, a telegram to this effect : ' Telegram received. Have entered car fancy $5 f. o. b. Wire shipping instructions,' the contract was made. What was it ? It was for two hundred barrels of cranberries, and they were to be fancy cranberries, delivered on board the cars, as the parties agree, at Tremont in this State, free from all claims for cartage and all liens. This is what the phrase f. o. b., free-on-board, means. When those cranberries were placed upon the cars at Tremont, Mass., it was a delivery of them to the defendants. . . .

" It makes no difference for the purposes of this case that these cranberries were to go to California. You cannot annex to that contract certain phraseology which the plaintiff claims should be annexed, and which I have refused to rule should be annexed, to wit: ' such as you would want to ship to California'; but the fancy cranberry was the cranberry which was then to be put upon the market here, and within that description."

The jury returned a verdict for the plaintiff in the sum of $561.74, being the amount received by the defendant from the sale of the cranberries, with interest ; and the plaintiff alleged exceptions.

*D. F. Kimball,* for the plaintiff.

*W. B. French,* for the defendants.

KNOWLTON, J. The question in this case is, what is the true construction of the contract which was made by the letters and telegrams of the parties. After some correspondence in regard to a proposed sale of cranberries by the plaintiff to the defendants' agent, the plaintiff wrote to the agent a letter referring to

that which had been said before, and containing this language: "We can quote you to-day fancy berries such as you would want to ship to California 5.25 f. o. b. We do not wish to deal with any one with the idea of selling them fruit at higher prices than our neighbors, but wish to give them as low prices, and at the same time give them freshly picked and solidly packed fruit that will carry for future trade; we would be pleased to have your order and answer your inquiry at any time." Three days later the plaintiff received in reply from the agent, a telegram in these words: "Am offered at five will you meet it." The plaintiff answered as follows: "Telegram received have entered order car fancy five dollars f. o. b. Wire shipping instructions." On the same day the agent wrote, "Your telegram is received and as I am not in a great hurry will write instead of wiring shipping instructions. [Then followed instructions for shipping to the defendants in San Francisco, California.] Don't forget to ship fresh picked, solidly packed, fruit that will carry for future trade." The plaintiff wrote and telegraphed from Wareham in this State and the agent from Gloucester. The defendants were fruit dealers in San Francisco.

The above quoted telegram of the defendants' agent had reference to such berries as the plaintiff had offered in the letter written three days before, and the subsequent telegram, saying that the plaintiff had entered the order, concluded the contract. Although this last telegram contains no other word than "fancy" to show what property was to be delivered, it must be taken to mean such property as the plaintiff had offered, and the agent had referred to in his reply proposing a lower price, namely: "fancy berries such as you would want to ship to California." His letter written the next day shows his understanding that the fruit was to be freshly picked that would carry for future trade.

The evidence tended to show that "fancy berries" in the cranberry trade does not mean berries of a particular variety, or possessing any one unusual quality; but generally, berries of excellent quality. There was much testimony that fancy berries at one season of the year are different from fancy berries at another season, and all agreed that the term "fancy" refers to quality. There was evidence tending to show that there was risk of loss

from decay in shipping berries from Wareham for market in San Francisco, and the jury might have found from the evidence that berries might be fancy berries, that is, berries of excellent quality, or even of the best quality known to the market, for immediate sale in the retail trade of Boston, which would not be fancy berries for shipment from Wareham to California, to be afterwards put upon the market there. Those which properly would be called fancy berries for one of these uses doubtless would have many qualities in common with those which would be called fancy berries for the other use; but there was evidence tending to show that some of the qualities which would make them most valuable for immediate consumption, would tend to diminish their value for transportation a long distance, to be used in a future trade, and that some of the qualities which would give them value for sale after a long interval, would diminish their value for immediate consumption. Whatever view the jury might have taken of the evidence bearing on this point, we think it plain that the parties in their contract had reference to the quality of enduring transportation as one of the qualities to be possessed by these fancy berries. Under the contract the plaintiff was bound to furnish berries having all the qualities that are common to different kinds of fancy berries sold in the market at that season of the year; that is to say, it was to furnish berries known to the market at that time as fancy berries. If there were no berries to be had at that season of the year that were fancy according to the meaning of the word in the cranberry trade, the plaintiff could not perform its contract. But if, as some of the evidence tended to show, slightly different qualities would be deemed important in buying berries for shipment to a great distance, from those desired in berries for immediate consumption, that fact was proper for the consideration of the jury in determining whether these berries were within the contract.

We are of opinion that the instruction requested by the plaintiff was substantially correct, and that the judge erred in instructing the jury in these words: "You cannot annex to that contract certain phraseology which the plaintiff claims should be annexed, . . . to wit: 'such as you would want to ship to California.'"

*Exceptions sustained.*